## EVRAGE v. LANE. (No. 610.)

Court of Civil Appeals of Texas. Eastland.
Oct. 25, 1929.

Callaway & Callaway, of Brownwood, for appellant.

G. E. Smith, of Comanche, for appellee.

HICKMAN, C. J. The appellant instituted this suit against appellee in the form of a statutory action in trespass to try title. The answer of appellee consisted of a general demurrer, a plea of not guilty, and a special plea in the nature of an estoppel. The special plea embodied the facts established upon the trial in the nature of a history of the title. These facts, briefly stated, are:

The land involved was deeded by James C. Switzer and wife to C. B. Switzer in 1916, in consideration, among other things, of certain notes then executed by C. B. Switzer to James C. Switzer. C. B. Switzer conveyed to

appellee, Lane, who assumed a note held by one McAshan (or McIntosh). This McAshan lien was a deed of trust lien executed by C. B. Switzer and wife to J. R. Eanes, as trustee for McAshan, as better security for the payment of a portion of the C. B. Switzer indebtedness, which had been transferred to McAshan by James C. Switzer. In this deed Lane also assumed an indebtedness owned by the Federal Land Bank of Houston against the land, and as further consideration he executed four vendor's lien notes payable to C. B. Switzer. The title then passed to appellant, Evrage, in the following manner: Lane conveyed to Easterling, who assumed the Federal Land Bank lien and the last three of the four notes executed by Lane to C. B. Switzer.

The statement of facts, in describing this deed, states that Easterling also assumed a $600 note payable to Easterling. This was probably intended as a statement that he assumed the $600 note payable to McAshan, as the evidence discloses no note owned by Easterling, and there was such a note outstanding in McAshan. Easterling conveyed to Davis, who assumed all of the indebtedness assumed by Easterling in his deed from Lane. Davis conveyed to Ewing, who assumed the same indebtedness. Ewing conveyed to appellant, Evrage. The consideration recited in this deed was as follows:

"In consideration of $100.00 to us in hand paid by W. H. Evrage, the receipt of which is hereby acknowledged, and the further consideration that the said W. H. Evrage assumed the payment of the following notes, viz.: (1) One note payable to the Federal Land Bank of Houston, Texas, for the sum of $500.00; (2) one note for $600.00 payable to Mr. McIntosh (this was evidently the McAshan note); (3) one note for $300.00 and 2 notes for $400.00 each and being the three last of a series of 4 notes granted by H. G. Lane to C. B. Switzer on April 29, 1920—the grantee assumes the payment of all accrued interest on the above described notes and agrees to pay all taxes on the land herein conveyed."

The last three of the notes executed by Lane to C. B. Switzer were negotiated by Switzer to Z. M. Bettis. No transfer of the superior title retained by Switzer was made to Bettis, but title to the notes was transferred by indorsement and delivery. In 1923, Bettis brought suit in the district court of Brown county against the appellee, Lane, the maker of these notes, joining the appellant, Evrage, as a party defendant, and obtained a personal judgment against Lane, with a foreclosure of the lien as against both Lane and Evrage. No personal judgment was obtained against Evrage. Both defendants defaulted.

There is a conflict in the testimony as to what transpired between appellant and appellee with reference to protecting the land from this foreclosure suit, but as the judgment of the trial court was in favor of appellee, and no findings of fact were requested or filed, we must, in support of the judgment, consider only the testimony favorable to appellee's contention. He testified that, after receiving notice of suit, appellant came to his place to talk to him about it, and told him that he "couldn't pay it, or wouldn't." He said he couldn't do it, and I rather insisted on him paying it and holding the land, and I went to his house. I thought maybe I would talk to him. I really wanted him to pay it and hold the land, because I didn't feel able to pay it. The first time I went to his house, his wife said he had gone to Bangs on some business, and I went back to his house again, and he told me he couldn't do it, or wasn't going to make an effort to, and I told him it had to be paid, that I didn't want judgment on me, that I couldn't afford a judgment against me on the land, that I couldn't afford that, and I insisted on him paying it, and I stayed at his house some little bit, and I asked him couldn't he get some of his friends to take it over, and he just talked like he wasn't going to try to, or wasn't going to make any effort to; that is the impression he made on me, that he wasn't going to try to." He further testified that he then made arrangement with Bettis to pay this off; that he paid it off, paid off the McAshan note, and all payments due to the Federal Land Bank, and had continued to make those payments as they became due; that he had also paid the taxes. He further testified that, after appellant failed or refused to make an effort to prevent the sale of the land under the foreclosure suit, he (appellee) took possession of the land, and has had possession since that time.

The land was not sold under the judgment of foreclosure. There were no improvements on the land, except a fence and a windmill, and appellee's possession was through a tenant of his on another tract of land nearby. This tenant used the land in controversy as a pasture at times, putting appellee's stock therein. Just before instituting this suit in 1928, appellant procured a quitclaim deed from C. B. Switzer, conveying to him all of Switzer's interest in and to the land. This case was tried below before the court without the aid of a jury, and resulted in a judgment that appellant take nothing, and that appellee go away without day, recovering his costs.

We have not before us a question of what character of title Lane had to the premises, nor have we the question of what would have been Evrage's rights, had he tendered payment of the obligations assumed by him in his deed. This suit was instituted by Evrage, without any tender whatever, and it is elementary that he must rely upon the strength of his own title. The effect of a recovery by him would be to vest title to the land in him, free from all liability for the payment of the notes assumed by him; this because Lane's cause of action against him

for a money judgment appears barred by limitation.

Appellant's title was not strengthened by the quitclaim deed from Switzer. At the time this quitclaim was executed Switzer had no character of interest in the land. He had long prior thereto negotiated his note to Bettis, and this note had been paid off in full by appellee. The superior title held by Switzer and Bettis, or either of them, existed only so long as the purchase-money notes from Lane to Switzer remained unpaid, and was immediately extinguished upon the payment by Lane of such notes, or the judgment into which they were merged. His title, therefore, rests solely upon the deed executed to him by Ewing, in which he assumed all the outstanding indebtedness against the property. His position is that Lane was a mere volunteer in paying off and discharging this indebtedness, and that, when the Bettis judgment and the McAshan deed of trust were paid off by Lane, such payments inured to his benefit, and full title immediately flowed to him. This contention would probably be upheld, were Lane nothing more than a volunteer, but we know of no rule of law or equity which would make of him a mere volunteer. He was personally liable for all this indebtedness, and discharged same only after he became convinced that appellant was not going to make any effort to do so. All of the deeds whereby the title passed from Lane to Evrage were executory. No one of the several holders had any claim of title to this land, except he first pay the agreed purchase price therefor.

In Estes v. Browning, 11 Tex. 245, 60 Am. Dec. 238, it is said: "Its effect is to declare that no man shall claim title to the land of another, without payment of the price agreed upon; nor shall he who refuses performance, make his own default the ground of rescission. * * *"

In McPherson v. Johnson et al., 69 Tex. 485, 6 S. W. 798, 800, it is said: "The argument comes back to this: that in order to recover the land he must have offered to pay the consideration. His plea of limitation was a distinct refusal to do this, and therefore the court did not err in holding, in effect, that he could not claim under a contract of sale with conditions of which he had refused to comply."

In the case of Johnson v. Smith, 115 Tex. 193, 280 S. W. 158, 160, our Supreme Court, speaking through Justice Greenwood, held that the right of a vendee in a deed in which a vendor's lien was retained was subordinate to the superior equitable title of the parties, who thereafter paid the purchase-money notes under a parol agreement with the vendee that they should become the owners of the land. It was there stated that: "No title to nor interest in the land was or could be acquired by Elymas Johnson, save such as was conditioned on payment of the notes."

The same opinion further states: "On Elymas Johnson's repudiation of his purchase or default to meet his notes, even his possession would have become wrongful but for the assumption and fulfillment of his contract by plaintiffs in error."

 In the deed from Lane to Easterling, a vendor's lien was expressly retained. While that express provision was not contained in the deed from Ewing to Evrage, still Evrage acquired no better title than that possessed by Easterling, his remote vendor. The respective rights of Lane and Evrage, therefore, are those of a vendor and vendee under a deed expressly retaining a vendor's lien. Independent of whatever rights and remedies Switzer and Bettis, or any other prior owner or lienholder, had, Lane had the right, after paying for his own protection the notes Evrage assumed, but which he failed or refused to pay, to repossess the land. The payment by Lane of the Bettis judgment extinguished the lien of Bettis and C. B. Switzer. Likewise his payment of the McAshan note extinguished the lien securing it. But such payments did not have the effect of perfecting the title of Evrage. The title of the Switzers, Bettis, and McAshan, and all rights and remedies possessed by them, flowed to Lane, and not to Evrage.

 But, pursuing the matter further, the evidence will support the conclusion that Evrage repudiated his obligations, and stood by, permitting Lane, who was liable therefor, to discharge same and take possession of the land. This shows a virtual relinquishment by Evrage. If so, then the relinquishment was to Lane, and the superior title never flowed to Evrage, when the liens were discharged, but stopped in Lane. If the facts are insufficient to show a relinquishment, they clearly are sufficient, we think, to work an estoppel against Evrage to claim title, without tender of performance of his contract, the only condition upon which he could acquire title.

Affirmed.